IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

TEAGAN P. CASS and
JOHNNY MARK BLISS                                             PLAINTIFFS

v.                              Case No. 6:15-cv-6045

DEPUTY BARNEY SOLIS;
DEPUTY DAVID JONES;
DEPUTY GREG HARMON;
SHERIFF DAVID WHITE;
AGENT MIKE MAY;
MONTGOMERY COUNTY, ARKANSAS;
STACY WATSON; and
JOHN DOES I-V                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 16). Plaintiffs

have responded. (ECF No. 21). The Court finds this ripe for consideration.

## BACKGROUND

This case arises out of alleged civil rights violations committed by various law enforcement

officials in Montgomery County, Arkansas. On October 28, 2014, Melissa Bliss encountered her

husband, Plaintiff Johnny Bliss, and his girlfriend, Plaintiff Teagan Cass, together at a store in

Norman, Arkansas. Plaintiffs left the store, and Melissa Bliss proceeded to follow them in her

vehicle. After Plaintiffs stopped their vehicle, Melissa Bliss drove her vehicle into the back of their

vehicle and continued to push it. Plaintiffs then exited their vehicle and Melissa Bliss and Plaintiff

Teagan Cass got into a physical altercation. Johnny Bliss broke up the fight, and everyone got back

into their vehicles. Plaintiffs and Melissa Bliss then continued from the place of the fight to the

Bliss's residence, located at 302 Cedar Street in Norman, Arkansas. When the parties arrived at the

house, Johnny Bliss unlocked the home and Melissa Bliss entered to collect some of her belongings.

Upon entering the house, an altercation ensued between Melissa Bliss and Plaintiff Johnny Bliss.

After the altercation at the house, Plaintiffs left in Johnny Bliss' vehicle and Melissa Bliss called the police. In response to the call, the Montgomery County Sheriff's Department dispatched three deputies to the scene. On their way to Melissa Bliss' home, one of the deputies passed Johnny Bliss' vehicle and made the decision to conduct a traffic stop. The deputy stated that, when Johnny Bliss exited the vehicle, he smelled strongly of marijuana. The deputy then asked Teagan Cass to exit the vehicle and again noticed the strong smell of marijuana coming from the vehicle. Teagan Cass told the deputy that she had a knife in her boot and removed it. Both Plaintiffs were patted down. Based on the strong smell of marijuana, the deputy radioed the two other deputies that had been dispatched. They drove to the traffic stop and searched the vehicle upon their arrival. Several cigarettes containing what appeared to be marijuana were located in the vehicle. When asked about the cigarettes by the officers, Johnny Bliss admitted that the marijuana found in the vehicle belonged to him. Johnny Bliss was then arrested and transported to the Montgomery County jail. Teagan Cass was allowed to leave the scene with a third-party.

Later that day, Teagan Cass went to the Montgomery County Sheriff's Office to bond Johnny Bliss out of jail. While there, she was cited for Third Degree Assault as a result of her physical altercation with Melissa Bliss. Johnny Bliss was on probation at the time of the incident and his probation officer was contacted as a result of his arrest. Johnny Bliss' probation officer, Terry Ford, instructed the Sheriff's Office to detain Mr. Bliss until he could arrive. After he arrived at the Sheriff's Office, Terry Ford, Sheriff David White, several deputies, Johnny Bliss, Teagan Cass, and Melissa Bliss departed for the Bliss's residence and began searching the home under Terry Ford's supervision. Johnny Bliss was standing on the front porch during the search. During the search, the

2

officers found and carried away several guns that were in the home, as well as numerous items of drug paraphernalia. Law enforcement officials then went to a motel where Johnny Bliss and Teagan Cass had been staying. Deputies searched their room and found nothing. After the search, Johnny Bliss was charged with marijuana possession, third degree domestic abuse, possession of drug paraphernalia, and possession of a firearm by a felon.

On December 20, 2014, Melissa Bliss sent the first of several threatening text messages to Johnny Bliss. In these text messages, Melissa Bliss threatened both Johnny Bliss and Teagan Cass. On December 23, 2014, Johnny Bliss and Teagan Cass complained to the Sheriff's Office about the text messages and met with a deputy sheriff. Plaintiffs completed affidavits and the deputy asked to look at Johnny Bliss' phone. When the deputy looked at the phone, he read a large number of threatening text messages from Melissa Bliss and told Plaintiffs he would need copies of the messages. Johnny Bliss offered to make copies and bring them back to the office. Plaintiffs came back to the Sheriff's Office later that afternoon with copies of some of the messages. The deputy explained that he needed all of the messages copied and asked to take Johnny Bliss' phone back to his office so that he could take photographs of the text messages. Johnny Bliss agreed. Due to the age and size of Johnny Bliss' phone, the task of taking photographs of the text messages took some time. Johnny Bliss became aggravated at the delay and demanded that his phone be returned. The deputy returned his phone, and Johnny Bliss left the office.

On February 7, 2015, Johnny Bliss was arrested by an Arkansas State Trooper on a warrant issued by the Montgomery County Circuit Court for a probation violation. While Johnny Bliss was being booked into the Montgomery County jail, Jailer Stacy Watson found a marijuana cigarette in

Johnny Bliss' pocket.[1]  A deputy sheriff witnessed the event.  Teagan Cass was also arrested that day on an active warrant on a charge of Contempt of Court for Failure to Pay Fines.

On February 8, 2015, the Montgomery County Sheriff's Office received reports that Johnny Bliss had threatened to "shoot up the courtroom" if he had to go to prison.  On February 9, 2015, as a result of this alleged threat, a search was conducted at 220 Cedar Avenue in Norman, Arkansas. This house was owned by Johnny Bliss' uncle, Allen Collins, who was present and consented to the search.  Johnny Bliss and Teagan Cass had been staying with Collins at the residence for a short time but were not present at the house during the search.  Law enforcement officials found nothing related to the threats during their search.

On February 14, 2015, sheriff's deputies scheduled and conducted an interview with Melissa Bliss concerning the threatening text messages that were sent to Johnny Bliss two months earlier. In this interview, Melissa Bliss confessed that she sent the text messages, explaining that she was in a rage and would never hurt anyone.  Melissa was eventually charged with and plead guilty to terroristic threatening.  Melissa Bliss never acted upon any of her threats.

The present lawsuit was filed on May 1, 2015 alleging unconstitutional treatment arising out of the above described events.  Plaintiffs' claims are made pursuant to 42 U.S.C. § 1983, and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  Plaintiffs allege that they were harassed and subjected to illegal searches and seizures, that Defendants' response to threats made by Melissa Bliss were not adequate, and that Defendants conspired to harass them in violation of their constitutional rights.  Plaintiffs allege that the policies and/or a lack of training and oversight in the Montgomery County Sheriff's Office resulted in their wrongful treatment.  Plaintiffs

---

[1]Stacy Watson is the brother of Melissa Bliss.

seek punitive and actual damages.  Defendants filed the pending Motion for Summary Judgment, arguing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established.  When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. County of LeSeur*, 47 F.3d 953 (8th Cir. 1995).  This is a "threshold inquiry of ... whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indust. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841 (8th Cir. 2006).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must then demonstrate the existence of specific facts in the record that

create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  Genuine issues of material fact exist when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 47 U.S. at 249.  A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials ... but must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 256.

## DISCUSSION

Plaintiffs argue that they were harmed as a result of illegal searches and seizures and harassment by  the Montgomery County Sheriff's Department.  Defendants respond that Plaintiffs have only brought suit against Defendants in their official capacities and that Plaintiffs have failed to show that a county policy or custom led to any alleged constitutional violation.

Plaintiffs respond that their Complaint contains sufficient allegations to sustain a cause of action against Defendants both in their individual and official capacities.  Plaintiffs further respond that there is an unconstitutional county policy at issue here involving Jailer Stacy Watson, the brother of Melissa Bliss, being permitted to interact with Johnny Bliss at the Montgomery County Jail. Plaintiffs argue that the Sheriff should have implemented a policy that disallowed law enforcement officials from working on cases that involved their families.  Due to a lack of policy, Plaintiffs claim that Melissa Bliss was allowed to harm them and conspire with law enforcement officers against them.  Plaintiffs state that they should have been protected from Melissa Bliss and are now scared of police officers.

a.    *Individual Capacity Claims*

In order to bring an individual capacity claim, a "clear statement" or a "specific pleading" indicating that the plaintiffs are suing the defendants in their individual capacities is required.

6

*Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("[S]pecific pleading of individual capacity is required..."); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) ("[A] clear statement that officials are being sued in their personal capacities" is required.).   When a plaintiff's complaint is silent or otherwise ambiguous about the capacity in which the plaintiff is suing the defendant, Eighth Circuit precedent requires the Court to presume that the plaintiff brings suit against the defendants in only their official capacities. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998).  Merely stating each individuals' name and official title is not sufficient to state an individual capacity claim. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619-20 (8th Cir. 1995).

In this case, Plaintiffs do not indicate anywhere in their Complaint that they are bringing claims against Defendants in their individual capacities.  While  Plaintiffs mention each separate Defendant by name and title, this is not legally sufficient to create an individual capacity claim.  *Id.*  In their response to the current motion for summary judgment, Plaintiffs cite to Rule 8(a) of the Federal Rules of Civil Procedure for the proposition that all that is needed to state an individual capacity claim is "a short and plan statement of the claim showing that the pleader is entitled to relief."  However, the Eighth Circuit has held that the requirement to include an "express statement" of a plaintiff's intention for the claim to be brought against a defendant in his or her individual capacity is consistent with Rule 8(a)'s pleading standards.  *See Baker v. Chisom*, 501 F.3d 920, 924 (8th Cir. 2007).  This statement is therefore required.  Because Plaintiffs have failed to include an express statement regarding any individual capacity claims, the Court finds that Plaintiffs have failed to properly allege any individual capacity claims.

b.    *Official Capacity Claims*

A suit against a person in their official capacity is treated as a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). A local government may not be sued under § 1983 based solely on the acts of its employees. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A local government may, however, be liable where lawmakers, or those whose acts represent official policy, establish a policy or custom that inflicts constitutional injury. *Id.* Government policy liability exists where final policymakers deliberately choose to follow a course of action chosen from among various alternatives, and the course of action causes constitutional injury. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). In the absence of an official written policy, government custom liability exists where the Plaintiff identifies a pattern of widespread unconstitutional conduct that was so persuasive and well-settled that it had the effect of law. *See Jane Doe A v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 646 (8th Cir. 1990). Proof of a continuing, widespread, and persistent pattern of unconstitutional conduct by government employees that caused an injury is required. *See Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998).

After reviewing the evidence and facts in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to show that a custom or policy of Montgomery County led to any constitutional violation. Plaintiffs have not alleged that any written policy led to a violation of their constitutional rights. Rather, Plaintiffs seem to allege that a custom or lack of adequate policies led to the purported constitutional violations. However, Plaintiffs have failed to show that the alleged

8

actions by Defendants were anything more than isolated incidents.[2]  Plaintiffs have offered no evidence that the complained of conduct was widespread or systematic throughout Montgomery County.  All of the allegations arise out of the initial altercation in October 2014, the reporting of the text messages in December 2014, and the February 2015 arrests resulting from active warrants on both Plaintiffs.  These isolated incidents involving different types of allegations and different officers are not sufficient to show a continuing, widespread, and persistent pattern of misconduct by Montgomery County law enforcement officials.  Plaintiffs only offer bare assertions regarding the customs and policies of Montgomery County, or lack thereof, and have not offered sufficient evidence to support their claims.  Accordingly, the Court finds that summary judgment for the Defendants in their official capacities is warranted.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment (ECF No. 16) should be and hereby is **GRANTED**.

IT IS SO ORDERED, this 14th day of June, 2016.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[2]The Court will assume for the purposes of this analysis that the alleged actions by Defendants amounted to constitutional violations.

9